# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**CHARLES S. DEAN, JUDY DEAN and**
**WILLIAM BUCHANAN, Individually**

    **Plaintiffs,**

v.                                                         Case No: 5:19-cv-547-Oc-30PRL

**DOMETIC CORPORATION,**
**ELECTROLUX NORTH AMERICA,**
**INC. and ELECTROLUX HOME**
**PRODUCTS, INC.,**

    **Defendants.**

## REPORT AND RECOMMENDATION[1]

Before the Court is Dometic Corporation's request to transfer this action to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) and the first-to-file rule. (Doc. 79). Dometic first filed a motion to transfer on November 5, 2019. (Doc. 14). That motion was withdrawn pending a resolution of its motion to strike allegations in Plaintiffs' complaint. (Docs. 36, 52, 53). Plaintiffs have now responded to the new motion (Doc. 82) and Dometic has replied. (Doc. 87). For the reasons stated below, I submit that the motion should be denied.

### I. Background

According to Plaintiffs' complaint, this case arises from a fire that started in a Dometic-brand gas absorption refrigerator located inside Charles and Judy Dean's RV. (Doc. 78). The fire

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

destroyed the RV and other personal property belonging to the Deans and a dump truck belonging to William Buchanan. (Doc. 78, ¶¶ 43-44). Plaintiffs allege negligence and strict liability against Defendants based on their knowledge and concealment of a design defect in the gas absorption refrigerators. (Doc. 78, ¶¶ 31-38, 59-90).

There have been several other lawsuits involving Dometic-brand gas absorption refrigerators, some of which have been transferred to the Southern District of Florida and consolidated in an action that is still ongoing, *Papasan v. Dometic Corp.*, Case No. 1:16-cv-2248. In 2016, a putative class action involving Dometic was filed in the Southern District of Florida ("Varner"). Varner alleged a common defect in the Dometic-brand gas absorption refrigerators, violations of consumer protection statutes, breach of implied warranty, and unjust enrichment. *Papasan v. Dometic Corp.*, Case No. 1:16-cv-2248, Doc. 22. Varner was ultimately resolved on summary judgment and dismissed without prejudice for lack of standing. *Id.* at doc. 219.

Around the same time, another similar putative class action was filed in the Northern District of California ("Papasan"). Shortly after, two additional putative class actions raising similar allegations were filed, one in the Central District of California ("Zimmer"), and one in the Southern District of Florida ("Zucconi"). Both Papasan and Zimmer were transferred to the Southern District of Florida. Papasan was transferred under §1404 and Zimmer was transferred under the first-to-file rule. *Id.* at docs. 262, 265.

Following the transfers, all actions were internally assigned to Judge Scola and the three remaining cases (Papasan, Zimmer, and Zucconi) were all consolidated under the original Varner docket. *Id.* at docs. 237, 273, 274.

Since 2016, Judge Scola has ruled on a motion for summary judgment, a motion to dismiss, and a motion for class certification. *Id.* at docs. 86, 219, 418. Dometic argues that this case should

also be transferred to the Southern District because it has "adjudicated multiple actions that are based on the exact same allegations as those raised here" and has "grappled with hundreds of pages of briefing, thousands of pages of exhibits, and dozens of expert reports that squarely address the allegations and issues in this case." (Doc. 79). Dometic asserts that "[t]here is simply no reason for this Court to sift through the same extensive evidence and complicated technical background when the Southern District has already spent years doing so." (Doc. 79). Plaintiffs oppose a transfer to the Southern District. (Doc. 82). Although Defendant Electrolux did not file a response, it has previously indicated that it opposed transfer. (Doc. 18).

## II. Legal Standard

Title 28 U.S.C. § 1404(a) provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party seeking transfer under § 1404(a) has the burden of establishing that the transferee forum is more convenient and that transfer is appropriate. *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1326 (M.D. Fla. 2010) (quoting *In re Ricoh Corp.*, 870 F.2d 570, 573 (1989)). Indeed, the burden is on the movant to show that the "balance of conveniences is *strongly* in favor of the transfer in order to overcome the presumption in favor of Plaintiff's choice of forum." *Nicopure Labs, LLC v. Consol. Trading Inc.*, No. 8:15-CV-1034-T-30EAJ, 2015 WL 12850582, at *1 (M.D. Fla. Aug. 19, 2015). (Moody, J.). Ultimately, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996) (internal quotation marks omitted); *Nicopure Labs, LLC.*, 2015 WL 12850582, at *1.

In determining whether to transfer venue under § 1404(a), the court must engage in a two-

step inquiry. *Ali v. Hudson Insur. Co., et al.,* No. 3:15-cv-816-J-34PDB, 2016 WL 1090018, at *2 (M.D. Fla. March 21, 2016). First, the court must determine whether the alternative venue is one in which the action could have originally been brought. *Id.* Then the court must consider "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." *Id.* The Eleventh Circuit has identified nine factors for the court to consider:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted).

Under the first-to-file rule, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit." *Id.* "The first-filed rule not only determines which court may decide the merits of substantially similar cases, but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013).

In determining whether the first-to-file rule applies, the court must consider "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Schwanke v. JB Med. Mgmt. Sols., Inc.*, No. 5:16-CV-597-OC-30PRL, 2017 WL 78727, at *2 (M.D. Fla. Jan. 9, 2017) (quoting *Rudolph & Me, Inc. v. Ornament Cent., LLC.*, No. 8:11–CV–670–T–33EAJ, 2011 WL 3919711, at *2 (M.D. Fla. Sept. 7, 2011)). "[T]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align.

Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." *Id.*

### III. Discussion

#### A. Transfer pursuant to 1404(a)

##### 1. Action "might have been brought" in the Southern District of Florida

First, the Court must determine whether this action "might have been brought" in the forum proposed by Dometic—the Southern District of Florida. 28 U.S.C. § 1404(a). An action might have been brought in a proposed transferee court if: "(1) the court has subject matter jurisdiction, (2) venue is proper, and (3) the defendant is amenable to process." *Andersons, Inc. v. Enviro Granulation, LLC*, No. 8:13-CV-3004-T-33MAP, 2015 WL 2025590, at *6 (M.D. Fla. Apr. 30, 2015). Here, there is no dispute that the first and third requirements are satisfied.[2]

However, there is disagreement as to whether venue is proper in the Southern District. Under the federal venue statute, a civil action may be brought in –

> (1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) If there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

---

[2] The Southern District would have subject matter jurisdiction over this action as the case presents diversity jurisdiction under 28 U.S.C. §1332 and Plaintiffs are residents of the state of Florida and subject to personal jurisdiction in Florida.

Dometic argues that venue is proper under subsection (b)(2) because "meetings and actions took place that bear direct relationship to the claims" in the Southern District. *See Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1357 (11th Cir. 1990); *see also PFM Air, Inc. v. Dr.Ing.HC.F.Porsche A.G.*, No. 8:08-CV-392 T17MSS, 2008 WL 2700069, at *6–7 (M.D. Fla. July 9, 2008) (finding that venue existed in the district where the defendants allegedly partook in a plan to conceal a design flaw). Dometic claims that during the April 2016 time period identified by Plaintiffs, when Dometic purportedly knew of but concealed the alleged defect, "Dometic's president directed and oversaw all corporate activities from a central corporate office located in the Southern District." (Doc. 79-2, ¶¶ 3-4). Dometic's president maintained many of Dometic's corporate files, conducted corporate meetings, and conducted correspondence on behalf of Dometic and its employees. *Id.*

Plaintiffs argue that all of their claims arise out of the refrigerator fire that occurred in the Middle District of Florida. That said, Plaintiffs, in an attempt to avoid Florida's product liability statute of repose, also allege a design defect that Dometic knew of and concealed. (Doc. 78, ¶¶ 31-38). As Dometic had an office in the Southern District during the time Plaintiffs allege the concealment of the design defect, venue is proper there. *PFM Air, Inc.*, 2008 WL 2700069, at *6–7. Accordingly, I submit that this action "might have been brought" in the Southern District of Florida.

### 2. Plaintiffs' choice of forum is not outweighed by other considerations

Despite prevailing on the first prong, Dometic has failed to meet its burden to show that Plaintiffs' choice of forum is "clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

#### a. Convenience of the witnesses

"Great weight" is given to the convenience of the parties and witnesses. *Suomen Colorize Oy v. DISH Network, LLC*, 801 F. Supp. 2d 1334, 1338 (M.D. Fla. 2011). In weighing the convenience of witnesses, "the court must qualitatively evaluate the materiality of the testimony that the witness[es] may provide" in the case and may not just compare the number of witnesses in each forum. *Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-CIV, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (internal quotation marks and citations omitted). The significance of this factor is diminished when the witnesses in another district are employees of a party and their presence at trial is easily obtained. *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) (citing *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001)).

Here, Plaintiffs' key non-party witnesses are the first responders and fire investigators from the fire scene. (Doc. 82, p. 9). All the witnesses that Plaintiffs identified are located in the Middle District of Florida.[3] Dometic specified two key witnesses who live in the Southern District[4] and further asserted that it "maintains a large corporate office in Pompano Beach, Florida" and "it would be more convenient for many of the witnesses to appear at trial located in the Southern District." (Doc. 79, p. 18). Yet, Dometic's employee witnesses are not a significant consideration because Dometic could obtain their presence at trial in the Middle District. *See Trinity Christian Center of Santa Ana, Inc.*, 761 F. Supp. 2d at 1327. Nor has Dometic shown that its witnesses

---

[3] Plaintiffs identified these witnesses in the Middle District: Thomas Hall, the assigned Bureau of Fire & Arson Investigations detective who issued the Bureau's report on the fire (Doc. 82-7, ¶¶ 2-4); Captain Matthew Legler, the Bureau of Fire & Arson Investigations supervisor who participated in the fire scene investigation (Doc. 83-1, ¶¶ 2-3); Deputy Fire Chief Keith Long, the Citrus County Fire Rescue shift supervisor called to investigate the fire scene (Doc. 82-8, ¶¶ 3-4); Deputy Charles Beetow, the Citrus County Sherriff's Office deputy called to investigate the fire scene (Doc. 82-9, ¶¶ 3-4); and eye witness Edward Wright (Doc 82-12, ¶ 2).

[4] Dometic identified Frank Marciano, Dometic's president at the time material to the alleged concealment of the defect (Doc. 79-2, ¶ 4) and Patrick McConnell, the key witness on issues related to the alleged defect, efficacy of the recall, and Dometic's alleged knowledge of the defect. (Doc. 73-3, ¶ 1).

would be unwilling to testify, and that compulsory process would be necessary. *Mason*, 146 F. Supp. 2d at 1362. Therefore, this factor weighs in favor of remaining in the Middle District.

> b. *Location of relevant documents and relative ease of access to sources of proof*

This factor examines the location of sources of documentary proof and other tangible materials, and the ease with which the parties can transport them to trial. Although, "[i]n a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant." *Microspherix LLC v. Biocompatibles, Inc.,* No. 9:11-CV-80813-KMM, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012).

Even so, Dometic contends that this factor supports transfer because the documents have already been produced in the Southern District and many of those documents were also filed under seal. Just because Dometic has produced documents in another district does not preclude it from also producing those documents to Plaintiffs in this district. *See Ivax Corp. v. B. Braun of Am., Inc.*, No. 00-4909-CIV-KING, 2001 WL 253253, at *2 (S.D. Fla. Feb. 28, 2001) (denying a motion to transfer because "[i]n the real world of computerization and electronic transfer of information, the assemblage of accounting data can be accomplished as easily in Miami, Florida as anywhere else"). Additionally, the property where the fire occurred and the Dean RV's refrigerator are both in the Middle District. Accordingly, this factor weighs in favor of remaining in the Middle District.

> c. *Convenience and relative means of the parties*

Dometic claims that the Southern District is more convenient for it because "it will be time consuming and expensive to educate a new court about these issues" since it has been litigating "identical issues—involving identical discovery—in the Southern District for many years." (Doc. 79, p. 20). Dometic also asserts that the Southern District is more convenient for Electrolux

because a registered agent for Electrolux Home Products, Inc. is located there. (Doc. 79, p. 20). Although Electrolux did not respond to the instant motion, it previously stated that it opposed transfer (doc. 18) and presumably, it would seemingly be the best judge of which district is more convenient.

Moreover, Dometic claims that Plaintiff Dean is a "longstanding Florida congressman with significant resources," and is accustomed to traveling within the state. (Doc. 79, p. 19). However, as Plaintiffs point out, they are elderly individuals who reside in the Middle District.[5] Plaintiffs all have health issues and other circumstances that make long distance travel difficult. (Docs. 82-1 ¶¶ 7-9, 82-2 ¶¶ 7-9, 82-3 ¶¶ 6-7, 82-4 ¶¶ 4-5, 82-5 ¶¶ 5-6). Dometic, on the other hand, is a large company and is better positioned to absorb the costs and inconveniences of travel if litigation is in the Middle District. *Nicopure Labs, LLC v. Consol. Trading Inc.*, No. 8:15-CV-1034-T-30EAJ, 2015 WL 12850582, at *2 (M.D. Fla. Aug. 19, 2015). This factor weighs in favor of remaining in the Middle District.

### d. *Locus of operative facts*

Here, a reading of the complaint makes clear that all Plaintiffs' claims arise from the fire that occurred on the Dean's property located in the Middle District of Florida. Indeed, the alleged concealment of the design defect that Plaintiffs allege caused the fire is also a relevant event that occurred, at least in part according to Dometic, in the Southern District. (Doc. 79-2, ¶¶ 3-4). Thus, this factor is neutral.

### e. *Familiarity with the governing law*

Plaintiffs allege theories of negligence and strict liability under Florida law and further allege knowledge and concealment of a design defect in order to overcome Florida's statute of

---

[5] Charles Dean is 80, Judy Dean is 78, and William Buchanan is 76. (Docs. 82-1 ¶ 4, 82-2 ¶ 4, 82-3 ¶ 5).

repose. (Doc. 78, ¶¶ 31-38, 59-90). Both the Middle and Southern Districts are in familiar with Florida law. *See Clark v. Crews*, No. 8:13-CV-2642-T-30MAP, 2014 WL 667825, at *3 (M.D. Fla. Feb. 20, 2014) ("This factor is not relevant to the Court's analysis because Florida and Federal law apply to this action.").

Nonetheless, Dometic asserts that the Southern District is "unquestionably more familiar with the law and facts relevant to this case" because it has dealt with other litigation involving a design defect in the Dometic-brand gas absorption refrigerator. (Doc. 79). While that may be of significance for trial efficiency and the interests of justice, it does not weigh toward transfer for the factor of familiarity with governing law. This factor is neutral because both courts are familiar with Florida law.

       *f. Trial efficiency and the interests of justice*

The final factors of trial efficiency and the interests of justice do not support transfer to the Southern District. Dometic argues that this factor favors a transfer because the Southern District "has already committed significant judicial resources to the contested issues and that transfer will therefore avoid an enormous duplication of time and effort." (Doc. 79, p. 16).

"In order to overcome the presumption in favor of plaintiff's choice of forum, the movant must show the balance of convenience is 'strongly in favor' of the transfer." *Anthony Sterling, M.D. v. Provident Life & Acc. Ins. Co.*, 519 F. Supp. 2d 1195, 1206 (M.D. Fla. 2007). Indeed, "[t]here is a strong policy favoring the litigation of related claims in the same tribunal." *Mitchell v. Edwards*, No. 609CV547ORL28KRS, 2009 WL 10667876, at *2 (M.D. Fla. Aug. 21, 2009). "Where transfer will result in more efficient pre-trial discovery, savings of time and money, avoidance of duplicative litigation, and avoidance of inconsistent results, transfer is appropriate." *R.E.F. Golf Co. v. Roberts Metals, Inc.*, No. 92-577-CIV-T-17A, 1992 WL 161041, at *3 (M.D.

Fla. June 29, 1992). Courts favor transfer when another venue "has already committed judicial resources to the contested issues and is familiar with the facts of the case." *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 722 (E.D. Va. 2005).

Plaintiffs here are suing both Dometic and Electrolux for negligence and strict liability (Doc. 78), unlike the class action suits against only Dometic in the Southern District where the plaintiffs allege several violations of federal and state law.[6] Dometic's concern of divergent judgments on the issue of whether a design defect is present in its gas absorption refrigerators is warranted. However, the Southern District has only examined whether the class plaintiffs have alleged or produced enough evidence involving a defect in the gas absorption refrigerators to have standing. *Papasan v. Dometic Corp.*, Case No. 1:16-cv-2248, Docs. 86 at 6–8, 219 at 6–10, 418 at 6–7.

Dometic is correct in its assertion that the Southern District has handled substantive motions to dismiss, for summary judgment, and for class certification. *Papasan v. Dometic Corp.*, Case No. 1:16-cv-2248, Docs. 86, 219, 418. Yet, the orders do not detail the "deep analysis of the complicated technical issues related to the alleged common defect—including an analysis of

---

[6] *Papasan v. Dometic Corp.*, Case No. 1:16-cv-2248, Doc. 300. The claims on behalf of the various classes in the Southern District include: violation of Magnuson-Moss Warranty Act (Count I), violation of the California Song-Beverly Consumer Warranty Act for breach of California's implied warranty of merchantability (Count II), breach of implied warranty of merchantability (Count III), violation of the California Legal Remedies Act (Count IV), violation of California unfair competition law (Count V), breach of implied warranty of merchantability (Count VI), violation of the Delaware Consumer Fraud Act (Count VII), violation of Florida's Unfair and Deceptive Trade Practices Act (Count VIII), breach of implied warranty of merchantability (Count IX), violation of the New Jersey Consumer Fraud Act (Count X), violations of New York General Business Law (Counts XI, XII), violations of the Ohio Consumer Sales Practices Act (Count XII), negligence (Counts XIV, XXI), strict products liability (Count XV), breach of implied warranty of merchantability (Count XVI), breach of implied warranty of merchantability (Count XVII), violation of Texas Deceptive Trade Practices Act (Count XVIII), breach of implied warranty of merchantability (Count XIX), violation of the Washington Consumer Protection Act (Count XX), and strict liability (Count XXII).

voluminous documents and deposition testimony" that will "be time consuming and expensive to educate a new court about." (Doc. 79, p. 16, 20).

First, the Southern District considered a motion to dismiss that mainly turned on whether the class plaintiffs had standing to proceed with the benefit of the bargain theory. *Papasan v. Dometic Corp.*, Case No. 1:16-cv-2248, Doc. 86. The court determined that standing depended on whether the class plaintiffs sufficiently alleged that the defect "is already present in all of the Named Plaintiffs' Defective Refrigerators whether or not physical damage from fire had resulted." *Id.* at 8. Ultimately, the court concluded that the plaintiffs had standing because, even though only one of the class plaintiffs actually experienced a fire, they adequately alleged that the defect was already present immediately after purchase. *Id.* The order then discusses the statute of limitations; warranty claims under California, Florida, Georgia, North Carolina, Arizona, Kansas, and Michigan law; unjust enrichment claims; and consumer protection claims. *Id.* at 10–26.

Next, the Southern District considered a motion for summary judgment that again, turned primarily on whether the class plaintiffs had standing. *Papasan v. Dometic Corp.*, Case No. 1:16-cv-2248, Doc. 219. Although this order was the most substantive order discussing the alleged defect, it largely analyzed the opinion of the class plaintiffs' expert. *Id.* at 6-10. After examining the language of the expert's report and deposition testimony, the court determined that the evidence did not support that the defect "is manifest at the moment of purchase or initiates immediately upon use of the refrigerators," which the plaintiffs needed to establish standing. *Id.* at 9–10. The court found that "[t]here is no question that Plaintiffs have established that there is a risk that their refrigerators will develop leaks and/or fires," but that the "complex interaction of variables [that plaintiffs' expert identified] required for a leak to develop in a [Dometic brand gas-absorption refrigerator] demonstrates that the injury . . . is speculative, not imminent." *Id.* at 10. The order

continued on to analyze the class plaintiffs' allegations of economic loss. The defect analysis may not help much here, where Plaintiffs could hire a different expert to determine whether there is a defect in the refrigerator and either court would have to conduct a lengthy examination of the evidence.

Lastly, in the Southern District's most recent order denying class certification, it determined that a different set of class plaintiffs established standing because of the overlap between a standing and merits analysis. *Papasan v. Dometic Corp.*, Case No. 1:16-cv-2248, Doc. 418. The court determined that "[p]laintiff's allegations that the [refrigerators] are defective goes to the merits of whether he can establish a breach of the implied warranty. . . and that allegation is intertwined with the issues of whether the [refrigerator] has caused an injury in fact as a basis for subject matter jurisdiction." *Id.* at 7 (quoting *Richards v. Del Webb Communities, Inc.*, No. CV-11-368-PHX-SMM, 2012 WL 12792184, at *6 (D. Ariz. Sept. 5, 2012). This order contained no further analysis of the alleged defect.

Dometic points out that two of the other cases originally brought in California were transferred to the Southern District of Florida. However, in Papasan, the Northern District of California explained that the class plaintiffs had requested centralization and transfer under 28 U.S.C. § 1407 and brought the motion before the United States Judicial Panel on Multidistrict Litigation ("MDL Panel"). *Papasan v. Dometic Corp.*, Case No. 1:16-cv-2248, Doc. 265 at 3.

The plaintiffs opposed Dometic's motion to transfer venue to the Southern District, but asserted in their motion to the MDL Panel that:

> (1) the cases before the MDL panel (i.e., *Varner/Zucconi, Zimmer*, and [*Papasan*]) share a "common core of operative factual allegations" that "predominate over individual questions of fact" specific to any one action; (2) there were "efficiencies to be gained through coordinated discovery and motion practice" that would "minimize duplication of effort and burden on all parties"; and (3)

>centralization would "minimize risk of inconsistent rulings," and accordingly, a propensity for "forum and judge shopping."

*Id.* at 3–4 (quoting MDL Brief at 2, 608, 11.). The Northern District of California concluded that "[i]n light of [p]laintiffs' statements, the balance of the transfer factors tipped in [Dometic's] favor." *Id.* at 4. Unlike here, where transfer on this factor would merely shift inconvenience from Defendants to Plaintiffs. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

Under Dometic's logic, any case filed against Dometic in the United States must be transferred to the Southern District because it decided that an expert's report didn't support a defect—something this Court does regularly. Dometic's fear of inconsistent results is not a sufficient reason to deprive Plaintiffs of their choice of forum. This factor does not support a transfer.

### B. There is no substantial overlap warranting a transfer pursuant to the "first to file" rule

The first-to-file rule does not apply because there is no substantial overlap between this case and those pending in the Southern District.

#### 1. Chronology of the two actions

It's undisputed that the cases consolidated in the Southern District were filed first. The consolidated action in the Southern District was filed on September 27, 2018 and this action was filed on September 27, 2019. (Doc. 79).

#### 2. Similarity of the parties

The only overlap between the parties is the similar Defendant, Dometic. Neither Defendant Electrolux nor Plaintiffs are members of the Southern District suits. Although Dometic claims that "the putative class in the Consolidated Action includes Plaintiffs" (Doc. 79, p. 24), Plaintiffs assert

that there is no way to know if the Dean Plaintiffs could be members of the class,[7] and Plaintiff Buchanan certainly is not a member of the class, as he did not purchase a Dometic refrigerator. (Doc. 82, p. 19–20). While the parties overlap to an extent, the overlap is not substantial enough to warrant a transfer to the Southern District. *Schwanke v. JB Med. Mgmt. Sols., Inc.*, No. 5:16-CV-597-OC-30PRL, 2017 WL 78727, at *3 (M.D. Fla. Jan. 9, 2017) (finding transfer not warranted when two defendants were also parties in a case in another district).

### 3. Similarity of the issues

The Court is also not convinced that Dometic has shown a substantial overlap of the issues in the two cases. Certainly, both cases involve Dometic-brand gas absorption refrigerators and the alleged design defect. Even so, the class action suit in the Southern District alleges various violations of state and federal laws. *Papasan v. Dometic Corp.*, Case No. 1:16-cv-2248, Doc. 300. Here, Plaintiffs clearly allege negligence and strict liability against Defendants for a fire allegedly caused by the defective Dometic-brand gas absorption refrigerator in the Dean Plaintiffs' RV. (Doc. 78). Although this factor does not require identical issues or causes of action, there is still a significant difference in the case here and the case in the Southern District, namely, that a fire caused significant damage to Plaintiffs' property in this case. The Court presumably would not only have to determine whether there was in fact a design defect in the Dometic-brand gas absorption refrigerators (the one similar issue), but also whether that defect caused the fire, and if Plaintiffs are entitled to an award of damages, among other findings.

Even if the first-to-file presumption had been established, the balance of the convenience factors weigh heavily in favor of remaining in Plaintiffs' choice of forum. *Zampa v. JUUL Labs*,

---

[7] Plaintiffs note that "neither Plaintiffs nor Dometic has been able to identify the model of the Deans' refrigerator destroyed in the fire, and it is therefore unknown whether it is one of the models at issue." (Doc. 82, p. 19-20).

*Inc.*, No. 18-25005-CIV, 2019 WL 1777730, at *2 (S.D. Fla. Apr. 23, 2019) ("[W]hile the forum where an action is first filed typically is given priority over subsequently-filed actions, it is appropriate to depart from the general rule when there is a showing that the balance of convenience tips in favor of the second forum or that there are special circumstances which justify giving priority to the second action.").

### IV. Recommendation

Because Dometic failed to meet its burden to show that Plaintiffs' choice of forum is "clearly outweighed by other considerations," Dometic's motion to transfer this case to the Southern District of Florida (Doc. 79) should be denied.

Recommended in Ocala, Florida on June 15, 2020.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy